COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough and Senior Judge Bumgardner

HEATHER AMBER FRENCH

MEMORANDUM OPINION[*]
v.      Record No. 1030-14-3                    PER CURIAM
FEBRUARY 18, 2015

ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Robert P. Doherty, Jr., Judge Designate

(Rena G. Berry, on brief), for appellant. Appellant submitting on
brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Joseph F. Vannoy, Guardian *ad litem* for the minor
children, on brief), for appellee. Appellee and Guardian *ad litem*
submitting on brief.

Heather Amber French (mother) appeals an order terminating her parental rights to her

children. Mother argues that the trial court "failed to give appropriate weight to the substantial

progress [she] made in remedying the conditions that led to the removal of the children and

continuation of the children's foster care placement once [she] became aware of the department's

requirements." Upon reviewing the record and briefs of the parties, we conclude that the trial court

did not err. Accordingly, we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother has three children, who were born in June 2008, May 2010, and October 2011. They had been living in homeless shelters intermittently since October 2011. In May 2012, mother and her three children were living in a shelter in Staunton, after having left a shelter in Harrisonburg. They left Staunton because her husband appeared at the shelter, despite having a protective order issued against him. Mother decided to go to Roanoke, where her parents lived. Initially, she planned to stay with her mother, but due to her mother's financial difficulties, mother and the children were not able to live with her. Her father also had financial issues and was not able to help mother and the children. Consequently, mother and the children went to a shelter.

On May 25, 2012, mother went to the Roanoke City Department of Social Services (the Department) with her three children. Mother told the intake worker that she and the children had been living in and out of shelters since October 2011.[1] She was not working and was not eligible for TANF benefits[2] until 2013. The intake worker spoke with a social worker in Augusta County and learned that they had an open child protective services case and that they were not able to provide services to mother because she left their jurisdiction. There had been six previous assessments in Harrisonburg, Rockingham, Staunton, and Augusta counties for inadequate shelter, inadequate supervision, and physical abuse. Mother and her husband, who is also the children's father, have a history of domestic violence. Mother asked the intake officer if her children could be placed in foster care in order for her to join the National Guard and go to boot camp; however, mother also told the intake officer that she had not spoken with a recruiter in over a year. The

---

[1] She was asked to leave two shelters.

[2] TANF is an acronym for Temporary Assistance for Needy Families. It is a benefit offered through the Department of Social Services for eligible families.

Department removed the children from mother's care due to her instability, her history in several other jurisdictions, and the inconsistencies in her reasons for placing the children in care.[3]

On June 5, 2012, the Roanoke City Juvenile and Domestic Relations District Court (the JDR court) found that the children were abused or neglected.

Initially, the foster care plan had a goal of return home. The JDR court ordered mother to participate in a psychological evaluation. The Department was prepared to make a referral for mother; however, she did not stay in contact with the social worker, despite the Department's requirement that she maintain contact. From May 25 until October 5, 2012, mother had no contact with the Department.

On October 5, 2012, mother came to a visitation with her mother-in-law, Carrie Alderson, who had been visiting the children at the Department. Mother had not informed the Department that she was coming. The oldest child, in particular, was traumatized with the visit and became hysterical at the end of the visit. Mother did not have any further contact with the Department until she appeared at another visitation with Alderson on February 12, 2013. Mother did not have stable housing and did not maintain contact with the Department, as requested. She appeared, without prior notice, at another visitation on March 26, 2013. The social worker requested that mother call her to schedule a meeting and discussed with her referrals for services. Mother did not call the social worker.

A family partnership meeting was held on April 22, 2013 to discuss a permanent plan for the children. Mother attended the meeting and told the social worker that she and her husband were back together and working on their marriage. They were living at a shelter. She asked for a referral to marriage counseling. The Department also discussed with her a list of requirements that she had

---

[3] There were concerns about mother's supervision of the children while they were at the shelter.

to complete in order to have the children returned home. Mother told them that she was looking for a job. By June 2013, mother separated from her husband again.

In September 2013, mother obtained independent housing. However, she repeatedly told the social worker that it was not ready when the social worker asked about coming to see it, so the social worker never saw the house. However, the CASA worker saw it in September 2013 and said that it was suitable for the children.

In April 2013, mother obtained a job with a construction company.[4] Due to weather, mother was laid off January, February, and March 2014, but resumed full-time employment in April 2014.

The Department expressed concern about mother's mental health. In November 2012, mother saw a nurse for depression and was prescribed medication. Mother did not see the nurse again and stopped taking the medication in January 2014.

On September 19, 2013, mother completed a psychological and parental capacity evaluation with Dr. Klaire T. Mundy. Dr. Mundy opined that mother was not in a position to provide the children with "a safe and secure environment." Dr. Mundy noted that mother was dependent on other people and relied on them to make decisions for her. Dr. Mundy recommended psychiatric treatment and possible medication, individual counseling, and a community support group. She noted that it would be "quite a lengthy therapeutic process."

From June until August 2013, mother participated in counseling with Shon Tucker. On June 25, 2013, Tucker notified the social worker of her involvement with mother. During counseling, Tucker and mother worked on mother's depression and her situation. From August until November 2013, Tucker did not counsel mother, but instead "mentored" her. Then, in November 2013, Tucker resumed a counseling role with mother. She went with mother to a family partnership meeting and subsequently received Dr. Mundy's report. In December 2013, Tucker referred

---

[4] In the fall of 2012, she worked thirty days for a clothing store.

appellant to Terry Adamson, whose specialty was trauma and abuse. Mother saw Adamson for approximately one month, and then she switched counselors to see Marsha Armstrong for therapy. Mother saw Armstrong from January through February 2014. Tucker stated that she maintained contact with mother while she saw the other therapists.

After December 2013, mother began monthly supervised visits with the children. The social worker expressed concern about mother's ability to manage all three children at once because she tended to focus on one child during the visits.

Once the children were placed in foster care, the middle child was diagnosed with probable disinhibited social engagement disorder. As a result of his behavior, he takes Prozac, sees a psychiatrist for medication management, and participates in play therapy. The other two children also participate in play therapy, and the youngest child is starting to display some of the same concerning behaviors as the middle child. Mother knew that the children were in play therapy, but did not contact their counselors. Mother also did not inquire about the middle child's prescription for Prozac.

On December 16, 2013, the JDR court terminated mother's parental rights to her children. Mother appealed to the circuit court, which heard evidence and argument on April 30 and May 1, 2014. At the conclusion of the trial, the circuit court held that it was in the children's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). The circuit court entered an order reflecting its ruling on July 2, 2014. This appeal followed.

## ANALYSIS

Mother argues that the trial court erred in terminating her parental rights to her children. She contends the trial court did not give appropriate weight to the progress she made in remedying the conditions that led to the removal and continuation of foster care once she became aware of the

Department's requirements. However, as discussed above, mother did not maintain regular contact with the Department during the first twelve months that the children were in foster care.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(B)[5] and (C)(2).[6] Mother contends she met many of the Department's requirements, including obtaining

---

[5] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[6] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

suitable housing and employment, participating in a psychological and parenting capacity evaluation, attending counseling, and visiting with the children.

According to Code § 16.1-283(B)(2)(c), the Department can establish a *prima facie* case of Code § 16.1-283(B)(2), if the "parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child."

In this case, the Department proved that mother did not follow through with appropriate efforts to address the abuse or neglect of the children. Mother and her husband had a long history of domestic violence, which the children witnessed. Mother and the children had been living intermittently in homeless shelters from October 2011 until May 2012 when she took the children to the Department. Numerous departments of social services had intervened and tried to provide services to the family, but mother left the jurisdictions before services could be put in place. There also was concern about mother's ability to supervise the children.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Dr. Mundy opined that mother's ability to parent was limited by her dependency issues and lack of stability. The trial court noted that Dr. Mundy made seven recommendations, and mother

followed "almost none" of them. Although mother started counseling in June 2013, she stopped in August 2013. She started again in November 2013, switched to two different therapists, and stopped again in February 2014. Mother was prescribed medication for her depression, but never followed up with a doctor and stopped taking the medication in January 2014.

When the children entered foster care, the middle child had severe behavior issues and was prescribed Prozac. There was evidence that the youngest child is starting to display some of the same behaviors. All three children require play therapy. The children have special needs, which mother was unable to meet. The children's development suffered under mother's care.

The children entered foster care in May 2012. Mother visited them three times in the first year, and she did not maintain contact with the Department. During that first year, she did not have stable housing or employment. She did not address her mental health issues. As the trial court noted, "The big problem on this [sic] that number one [sic] Ms. French did go a year really without doing much of anything."

"The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

Although mother presented evidence of her recent housing and employment situation, there also was evidence that she still had not addressed all of the Department's concerns, especially concerning her mental health. As the trial court noted, she did not have the necessary stability, nor did she have the ability to handle the children's special needs. The trial court explained that mother "had the wherewithal to get in touch with the Department of Social Services and try to make this work and didn't." At the time of the circuit court hearing, the children had been in foster care for almost two years, and mother still was not in a position to care for the children.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in terminating mother's parental rights to her children pursuant to Code § 16.1-283(B) and (C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.